*In re* FISHBECK'S ESTATE.

KNAPP *v.* JESSUP.

1. EXECUTORS AND ADMINISTRATORS — MANAGEMENT OF ESTATE — LIABILITY FOR LOSSES—NEGLIGENCE.

    Where it was understood by the heirs that the administrator should retain funds in his hands for the care of testator's widow, he is not liable for the loss of the proceeds of a mortgage which he deposited in a bank without negligence, the bank failing three months later.

2. SAME—BURIAL PLACE—VAULT—REPAIRS.

    The expenditure of a reasonable amount of money for the erection of a vault in a cemetery and keeping it in repair is a proper charge against the estate of a deceased person, and it is immaterial that the title to the lots on which it is erected is taken in the name of the widow and sons of deceased.

3. SAME—INTEREST—COLLECTION OF DEBTS—PRESUMPTION.

    Where, on settlement of the account of a deceased administrator, it does not appear at what time a mortgage belonging to the estate was paid, the administrator is properly chargeable with interest only to the time of appraisal, there being a presumption, in the absence of proof, that past due debts were promptly collected.

4. Same—Compensation of Administrator—Statutory Fees.
   The heirs cannot complain of the allowance of the statutory
   fees to an administrator who promptly collected the funds of
   the estate, took care of the homestead farm, looked after the
   care of decedent's widow, and promptly divided to each heir
   his share of the estate.

Error to Livingston; Smith, J.   Submitted October 6,
1906.   (Docket No. 27.)   Decided November 13, 1906.

Grace E. Knapp presented her final account as admin-
istratrix de bonis non of the estate of Freeman Fishbeck,
deceased.   The account was allowed in the probate court,
and Alma Jessup and Ida Smock appealed to the circuit
court.   From the judgment rendered, contestants bring
error.   Affirmed.

Freeman Fishbeck died July 21, 1882, leaving a widow
and five children,—three sons, named William, Charles,
and John, and two daughters, Mrs. Ida Smock and Mrs.
Alma Jessup.   Upon the petition of Mrs. Jessup, Charles
was appointed administrator, and filed a bond with John
and William as sureties.   September 6, 1882, an inventory
was filed showing an appraisal of personal property of
$11,752.47; real estate, $2,500—total, $14,252.47.   The
personal property consisted of notes, merchandise, farm
stock, tools, and household goods.   Charles continued as
administrator until his death, March 21, 1903.   He never
rendered an annual or final account, and no account was
found showing an itemized statement of receipts and dis-
bursements.   For four years he was also judge of probate.
No commissioners on claims were appointed, and no claims
were presented to or allowed by the probate judge.   His
widow lived upon the small farm, the homestead, about
17 acres of which only was improved, until her death in
1892.   Her estate was never probated.   She had nothing
except that to which she was entitled from her husband's
estate.   No allowance was made for her support and
maintenance, neither was a dower admeasured to her.

The small farm was leased, evidently with the understanding on the part of all the heirs, to a tenant, who took care of their mother, with what assistance Charles provided her with out of the estate. Mrs. Smock testified that she was "perfectly willing that Charles should take whatever needed, and pay it to her. I thought he was doing it."

On January 1, 1883, the administrator distributed among the heirs $7,500; April 15, 1885, $1,000; May 20, 1892, $3,250. In all he has distributed to each of his brothers and sisters out of the estate the sum of $3,146.05, making a total, including the same amount to himself, of $15,730.25. Upon the death of the administrator, his daughter Grace Knapp was appointed administratrix de bonis non, and filed an account as near as it could be ascertained of receipts and disbursements by her father. To this allowance Mrs. Smock and Mrs. Jessup objected. The account was allowed by the probate court, and an appeal taken to the circuit court. The trial was there had before a jury. The account as filed showed credits of $19,843.18, and debits amounting to $19,266.28. In this account the jury made one correction, charging the administrator with an item of $355.47. Among the items so allowed was an item of services by the administrator for 21 years of $750. The court, in rendering judgment, reduced this item to the statutory allowance, so that the judgment as rendered made the credits $19,330.37 and the debits $19,266.28. It thus appears that the administrator had paid out $64.09 more than he received.

The objections relate (1) to amount paid heirs at law; (2) to a loss by the administrator of funds deposited in a bank known as the "Weimeister Bank;" (3) to the payment of certain debts without their allowance by commissioners, or by the probate judge acting as commissioner; (4) expenses in erecting the vault; (5) a mortgage known as the "Yelland mortgage;" (6) administrator's fees; (7) the item of $750, allowed to the administrator as paid to the widow of Freeman Fishbeck.

*Shields & Shields,* for appellants.

*Louis E. Howlett* and *William P. Van Winkle,* for appellee.

GRANT, J. (*after stating the facts*).    Freeman Fishbeck left no debts except the expenses of his last sickness, and perhaps two other small items.    These were paid by the administrator.    The contestants, Mrs. Smock and Mrs. Jessup, admit in their answer that the charge of $132.52 for services of physicians during their father's illness was reasonable and a fair charge, that the funeral expense was also reasonable and a proper charge, and that the physicians' bills for their mother should be allowed. The holding of this court in *Brown* v. *Forsche,* 43 Mich. 492, speaking through Justice COOLEY, is applicable to this case:

"A probate case on appeal is to be tried and determined on the same principles that would be administered by the probate court itself.    That court, in adjusting the accounts of administrators, is governed by the broad principles of equity; and it is at all times competent for the administrator, unimpeded by technical rules, to show the fairness of his dealings, the real nature of his transactions, and to restrict the amount for which he should be held liable to that which equity demands."

This case must be examined and determined upon equity principles.    The contestants are presumed to know the law.    There is no claim that they did not.    The first distribution gave each of the heirs the full amount of the personal property aside from that which should have been assigned to the widow.    There was no necessity of administration, except to pay the insignificant amount of the debts and distribute the estate.    While there is no evidence of any express agreement between the heirs of Freeman Fishbeck that the estate should be divided without further expense of administration, the conclusion is irresistible that they trusted their brother Charles, the administrator, to divide the estate, which he promptly did, to

retain enough for the care of their mother, and to preserve the homestead for her use while she lived. That the administrator faithfully and honestly did this is beyond dispute. Upon the death of the mother the real estate was sold by the heirs and the amount received divided among them.

We will now discuss the several claims of the respondent:

1. Without entering much into detail, we think it is clearly shown by the evidence that both contestants received each the same amount as the brothers received, to wit: $3,146.05. Mrs. Jessup was not a witness, neither was her deposition taken. The dispute in her case arises over a certificate of deposit for $700. It is sufficient to say that she received it from the administrator, and it was a payment upon her distributive share. Mrs. Smock claims that her amount is $300 short. This $300 is accounted for by the fact that her husband received it for her, and with the understanding that he received it as a part of her distributive share. She testified: "If my husband got it, I am willing to have it apply on my share." He testified that he did get it, and that it was to apply on her share of the estate.

2. The administrator deposited money as administrator in the Weimeister Bank. The bank then had good credit and standing in the community. It subsequently failed. The percentage received by the administrator from the bank was promptly divided among the heirs and receipted for by them. There is nothing in the record to show that the administrator was guilty of negligence in so depositing the funds. The law, therefore, does not hold him liable for the loss. *In re Grammel's Estate*, 120 Mich. 487, and authorities there cited. It is, however, claimed that the administrator's estate is liable for the loss, because he was dilatory in the settlement of the estate, and that had he divided the estate seasonably the loss would not have occurred; citing *Wood* v. *Myrick*, 17 Minn. 408; *Palmer's Appeal*, 1 Doug. (Mich.) 422; 7 Am. & Eng.

Enc. Law (1st Ed.), p. 352, and note. This money was received by the administrator in payment of a mortgage on June 18, 1889. The bank failed three months and seven days thereafter. The administrator had the right to retain funds in his hands for the care of his mother, and it was evidently so understood by all the heirs that he should do so. She might at any time apply for her share of the estate. The principle of those cases therefore does not apply.

3. Whether under any circumstances an administrator may pay the debts of the estate which have not been allowed by commissioners or by the probate judge we find it unnecessary to determine. The administrator kept no regular book account. In a tin box were found some receipted bills and memoranda of payments made by him for various items. Some are dated and some are not; the receipted bills not being printed in the record and the date not given. They were in evidence before the jury and the court. All the record shows in regard to the item of $35.50 for merchandise, purchased from Hickey & Goodnoe, appears from a witness who produced the papers from the tin box. After testifying to certain small items, consisting of repairs upon the barn, dated July 12, 1892, the witness said: "The next item of merchandise to Hickey & Goodnoe, $35.50, I got from the items in the tin box." Its date is not shown, and we cannot determine whether it was incurred by the deceased in his lifetime, or expended by the administrator for the support of his mother, or for repairs. As already stated, the answers of the respondents conceded the correctness of the services for medical attendance. This concession eliminates them from consideration. Aside from these items, the amount is so small that it is not equal to the balance due the administrator as allowed by the court.

4. The administrator was allowed $450 for the construction of a vault, and subsequently other items were allowed for repairing it. The three brothers contributed $200 apiece out of their own funds towards its construction.

Mrs. Jessup subsequently contributed $100 towards repairing it. This repair was necessary for the preservation of the vault and the bodies there reposing. The erection of the vault was in accordance with the expressed wish of the father. The amount was reasonable and was properly allowed. *Jackson* v. *Leech's Estate*, 113 Mich. 391. To construct a vault for the repose of the dead is as proper as the erection of a monument. *In re Shipman's Estate*, 82 Hun (N. Y.), 108. The two cemetery lots were purchased on which to erect the vault. The title of one lot was taken in the name of the mother. The title of the other was taken in the name of the three sons and the mother. It is immaterial that the title to the lots was taken in the names of the mother and the sons. *Birkholm* v. *Wardell*, 42 N. J. Eq. 337. The expenditure of a reasonable amount of money to keep the vault in repair was a proper charge against the estate. *Bell* v. *Briggs*, 63 N. H. 592.

5. One of the assets of the estate was a mortgage, dated February 27, 1877, due five years from date, and given by one Yelland for $700. This mortgage was found among the papers of the administrator after his death. The administratrix with the will annexed, in the honest belief that this had not been paid, commenced foreclosure suit. The bill was dismissed; the court finding that the mortgage had been paid. The foreclosure proceedings are not in the record, and it does not appear when the mortgage was paid to the administrator. He was charged with the face of the mortgage and the interest up to the time of the appraisal of the assets of the estate. It is stated in the brief of counsel for the appellee that the court found that the mortgage must have been paid soon after the death of Freeman Fishbeck, or soon after it became due. Why it was not discharged does not appear. In the absence of proof, the presumption is that past-due debts of the estate were promptly collected by the administrator. The court so held. It follows that the administrator is not chargeable with interest on this item.

6. The administrator was allowed the statutory fees. Considering that the administrator collected the funds of this estate, took care of the farm, looked after the care of his mother, and promptly divided to each his share, the court might with propriety have allowed some extra compensation. The petitioners cannot justly find fault with the allowance of the statutory fees.

7. It is evident that the mother could not be properly cared for upon the income from the little farm on which she lived. It is shown from the memoranda made by the administrator found in the tin box·that from July, 1882, to October 4, 1884, he paid her cash amounting to $171.75. In making out the account the administratrix de bonis non credited him with $75 a year for the benefit of the mother. We think the evidence justifies this allowance.

8. It is entirely clear that the administrator acted with promptness in the collection and distribution of the estate among his brothers and sisters; that by the assent of all he provided for his mother, took her to his home during her last illness, paid her physicians' bills and funeral expenses; and that after her death he promptly divided among them what he had retained for her support. It is impossible to read this record without reaching the conclusion that he acted honestly, that none of the estate remained in his hands, and that all understood that the entire estate was divided. The contestants and their brothers were intelligent, were fully cognizant of their rights, and it is impossible to believe that they would have waited 20 years after the death of their father and 10 years after the death of their mother, if they had supposed that their brother still retained in his hands moneys belonging to them. Undoubtedly the discovery of the Yelland mortgage after his death caused the proceedings for the appointment of an administratrix de bonis non. It proved that there was no estate left to administer.

The judgment is affirmed.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.